UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Hyun Jin Kim,

    *Plaintiff,*

v.

Maha, Inc., D/B/A Midori Japanese
Restaurant and Bong Hee Ma

    *Defendants.*

No. 22 CV 2375

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

    After working twenty years at the Midori Japanese Restaurant, Plaintiff Hyun Jin Kim quit in April 2022. A month later, Kim sued Midori and its owner, Bong Hee Ma (collectively, "Midori"), for failing to pay her the applicable minimum and overtime wage under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and the City of Chicago Minimum Wage Ordinance ("CMWO"). Armed with little more than Ma's deposition testimony, Kim has moved for summary judgment, arguing the undisputed evidence demonstrates Midori failed to pay Kim any wages, let alone minimum or overtime wages. Because the record is unclear as to how many hours Kim worked or how much she was paid, the motion is denied.

**I.    Background**

    The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits.[1] [Dkts. 36, 41.] The Court presents the facts in the light most

---

[1]    Neither party complied with the requirements for disputing the other's facts as prescribed in L.R. 56.1(e)(3). Midori failed to "cite specific evidentiary material" when responding to Kim, opting instead to simply write "disputed." [Dkt. 42.] Kim's failure is more

favorable to Midori as the non-moving party. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023). These facts are undisputed except where a dispute is noted.

Kim worked as a server at Midori, a restaurant entirely owned by Ma, from 2002 until April 30, 2022. [Dkt. 36 ¶¶ 1-2.] Kim has two major complaints stemming from her time at Midori that form the basis for this lawsuit: Midori did not pay her the prevailing minimum wage and did not adequately compensate her for overtime work.

According to Kim, she never received wages during her employment at Midori, with the entirety of her compensation coming from tips. [*Id.* ¶¶ 4-5, 11.] Ma herself seemingly corroborated this assertion during her deposition, stating Kim would only receive "wages" if she received less than $50 in tips on a given day (Ma explained the restaurant would then cover the difference between Kim's tips and $50). [Dkt. 36-2 at 16.][2] Ma's testimony is tempered, however, by a declaration from Roberto Pina, who served as Midori's manager for the entirety of Kim's tenure and was responsible for setting employees' schedules and paying them. [Dkt. 41 ¶¶ 1-2.] According to Pina, Kim received $50 in wages each day, in addition to whatever she received in tips. [*Id.* ¶ 6.]

Kim also contends she was never paid overtime wages at Midori, despite routinely working more than 40 hours per week. [Dkt. 36 ¶¶ 6, 12.] More specifically,

---

pronounced—she did not respond at all to Midori's additional facts. *See* L.R. 56.1(c)(2). Consequently, the Court will treat each fact as admitted as required under L.R. 56.1(e)(3), and will find a dispute only where the parties' competing "admitted" facts are incompatible.
[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Kim avers she worked (i) 11.5 hours a day 5-6 days per week from May 4, 2019, through March 2020; (ii) 7 hours a day for 5-6 days per week from March 2020 through March 2021; (iii) 7 hours a day for 7 days per week from April-October 2021; and (iv) 7 hours a day 5 days per week from November until she quit at the end of April 2022. [*Id.* ¶¶ 7-10.] Relying on Pina's assertions, Midori argues Kim never worked more than 40 hours per week. [Dkt. 41 ¶¶ 8-12, 14.] Neither party attaches any work schedules, time sheets, pay stubs, W-2s, or other documentation in support of their respective positions regarding how many hours Kim worked or how she was paid.[3]

On this record, Kim moved for summary judgment. She also asks the Court to certify a collective for other Midori workers who were subject to these same payment policies, a request this Court previously denied. [*See* Dkt. 16; Dkt. 37 at 7.]

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and

---

[3]    Midori attached 124 checks Kim received between March 11, 2021, through the end of her employment, [*see* Dkt. 41-4], but these shed no light on how many hours Kim worked or whether the source of the money is tips or wages.

draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

## III. Analysis

Kim sued Midori alleging minimum and overtime wage violations under the FLSA, IMWL, and CMWO. Although there are differences between the minimum wages under these provisions, the analysis for whether a violation occurred is identical. *Zavala-Alvarez v. Darbar Mgmt.*, 617 F. Supp. 3d 870, 883 (N.D. Ill. 2022) ("Courts analyze wage claims under the" FLSA, IMWL, and CMWO "the same way, because the requirements of each are basically the same"); *see also Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010); *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010); *Vann v. Dolly*, Inc., 2019 WL 1785589, at *2 (N.D. Ill. Apr. 24, 2019).

"The FLSA 'is designed to protect workers from the twin evils of excessive work hours and substandard wages.'" *Perez v. Over-Easy, Inc.*, 2019 WL 5101606, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001)). To combat excessive work, the FLSA requires employers to pay employees at least one and one-half times their normal pay rate for all hours worked over 40 hours in a week. 29 U.S.C. § 207(a). Illinois and Chicago have identical requirements. *See* 820 ILCS 105/4a(1); Chicago Mun. Code § 6-105-040.

As for substandard pay, the FLSA prescribes the standard minimum wage an employee must receive under federal law, which at all times relevant to this lawsuit was (and still is) $7.25. 29 U.S.C. § 206(a)(1). However, the FLSA permits employers to pay a "tipped employee"—an employee who "customarily and regularly receives more than $30 a month in tips"—less than the minimum wage amount if certain criteria are met. 29 U.S.C. § 203(t). This is referred to as the "tip credit."

For an employer to use the tip credit, they must pay the employee an hourly cash wage no less than $2.13, the federal minimum wage for tipped employees as of August 1996. 29 U.S.C. § 203(m)(2)(A); *see also* 29 C.F.R. § 531.59(b). The employer can then credit "an additional amount on account of the tips received by such employee which amount is equal to the difference between" $2.13 and the prevailing minimum wage. *Id.* Simply put, the employer can use the tips the employee receives to cover a portion of the minimum wage. But the employee must actually receive sufficient tips each hour to bridge this $5.12 gap (or the employer must pay the difference to ensure the employee is making minimum wage), and the employer must inform the employee they are paying the employee consistent with the tip credit. *Id.*

Illinois and Chicago likewise have minimum wage requirements and rules that allow employers to pay employees who historically receive tips less than the standard minimum wage. *See* 820 ILCS § 105/4(c); Chicago Mun. Code § 6-105-030. Although not accurately[4] provided by either party, the tipped employee payment rates differ

---

[4]     Kim provided minimum wage figures for non-tipped employees. [Dkt. 37 at 3-4.] And the pertinent information is not readily available from the sources Kim provides. Although Kim accuses Midori of such, it is she who has "caused additional judicial work" through her

between jurisdiction and year. The Court's research reveals the following applicable minimum wage rates for tipped employees in the years relevant to this lawsuit. The first figure in the chart is the minimum cash wage the employer must pay tipped employees each hour; the second figure represents the standard minimum wage (which the employer must cover if the tipped employee does not receive sufficient tips):

| Year | FLSA[5] | IMWL[6] | CMWO[7] |
|------|---------|---------|---------|
| 2019 | $2.13 / $7.25 | $4.95 / $8.25 | $6.40 / $13.00[8] |
| 2020 | $2.13 / $7.25 | $6.00 / $10.00 | $8.10 / $13.50[9] |
| 2021 | $2.13 / $7.25 | $6.60 / $11.00 | $8.40 / $14.00[10] |
| 2022 | $2.13 / $7.25 | $7.20 / $12.00 | N/A |

---

inability to provide the correct information. *Cf Denius v. Dunlap,* 330 F.3d 919, 926 (7th Cir. 2013).

[5] Figures pulled from the corresponding years of the following Department of Labor website: https://www.dol.gov/agencies/whd/state/minimum-wage/tipped/History Courts may take judicial notice of public record information obtained from an official government websites not subject to reasonable dispute. *Denius,* 330 F.3d 919, at 926.

[6] *Id.*

[7] Changes to CMWO minimum wages occur on July 1 of each year, so the figures listed are for July 1 – June 30 of the following year (e.g., the 2019 box covers the minimum wage applicable from July 1, 2019, though June 30, 2020). Moreover, starting in 2020 the CMWO began tiering its minimum wage between employers with more than 20 employees. The record is unclear as to how many workers Midori employed, so the Court will assume it had fewer than 20. *Majors,* 714 F.3d 527, at 532.

[8] https://web.archive.org/web/20190701151132/https://www.chicago.gov/city/en/depts/bacp/supp_info/minimumwage.html

[9] web.archive.org/web/202007240300007/https:/www.chicago.gov/city/en/depts/bacp/supp_info/iminimumwageinformation.html

[10] https://web.archive.org/web/20210708230115/https://www.chicago.gov/city/en/depts/bacp/supp_info/minimumwageinformation.html

Federal law makes clear that when there are competing minimum wage requirements, an employee is entitled to the highest applicable minimum wage. 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter"); *see also Zavala-Alvarez*, 617 F.Supp.3d 870 at 883 ("When an employee is subject to federal, state, and municipal minimum wage laws, the employee is entitled to the highest of the minimum wages.") Accordingly, Midori was obligated to pay Kim no less than $6.40 in cash wages at the beginning of the applicable period, and $8.40 by the time she quit in April 2022 under the CMWO.

To establish Midori violated paying Kim this wage, or 1.5 times this wage for overtime, she "has the burden of proving that [s]he performed work for which [s]he was not properly compensated." *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016). Put differently, "an employee must come forward with evidence about how much he or she worked, and how much he or she got paid." *Zavala-Alvarez*, 617 F.Supp.3d 870 at 883; *see also Melton*, 838 F.3d 814 at 818.

To ensure workers have an opportunity to meet this burden, the FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211; *see also Walsh v. Poros, Inc.*, 2023 WL 2646723, at *7 (N.D. Ill. Mar. 27, 2023) ("The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an

accurate record of all hours worked by employees.") These records include the employee's regular hourly pay; the amount and nature of each payment; the number of hours worked each day and week; premium pay for overtime hours; any additions or deductions to wages; the total wages for each pay period; and the pay period covered by the payment. 29 C.F.R. § 516.2(a)(6)-(12). "For tipped employees, employers are also required to keep and maintain records of the weekly or monthly amounts of tips employees receive and report to the employer and the amount by which wages were increased by tips." *Walsh*, 2023 WL 2646723, at *7; *see also* 29 C.F.R. § 516.28. An employer is obligated to keep payroll records for no less than three years and time records for at least two years. 29 C.F.R. §§ 516.5, 516.6.

An employer who fails to abide by these requirements does not relieve itself of liability under the FLSA. *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). If an employee believes her employer kept faulty records, she must prove "that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Melton*, 838 F.3d at 818 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds* as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005). Should the employee satisfy this burden, the employer must then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. 680 at 687-88).

8

Applying these principles to this case, Kim has not indisputably established "she performed work for which she was not properly compensated" nor has she provided evidence to show "the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. 680, at 687. The Court reaches this conclusion because (i) Kim does not dispute Pina's sworn assertions on how she was paid or the number of hours she worked; (ii) she does not include any documentation corroborating her assertions regarding wages or hours; and (iii) while the absence of supporting documents from Midori strongly suggests it failed to abide by FLSA recordkeeping requirements, Kim does not articulate what records are missing, and how that impacts her claim.

Kim's opening brief is unhelpful because it does not anticipate Pina's testimony regarding how Kim was paid or how many hours she worked. [*See* Dkt. 37.] For example, Kim argues it is "incontrovertible" Midori failed to provide her "ANY" cash wages because Ma "stated that she failed to provide Plaintiff with the minimum wage required by state federal and local law." [Dkt. 37 at 4.] But Pina—who was responsible for paying her—asserts Kim was paid $50 in wages every shift.[11] [Dkt. 41 ¶ 6.]

Likewise, Kim asserts it "remains uncontested that Plaintiff consistently worked overtime hours throughout her tenure with" Midori. [Dkt. 37 at 6.] But Pina—who scheduled Kim's shifts for the entire relevant timeframe—states "Kim never worked more than forty hours per week at" Midori. [Dkt 41 ¶ 8.] As mentioned above,

---

[11] Pina also avers Ma was not heavily involved in Midori's operations, only coming to the restaurant 1-2 times a week for a few hours at most. [Dkt. 41 ¶¶ 3-5.]

neither party included any documentation that would permit the Court to analyze the veracity of these competing assessments. The Court cannot make credibility determinations at summary judgment generally, let alone in Kim's favor. *Johnson*, 936 F.3d 695, at 705; *see also Russell v. Bd. of Trustees, Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) ("summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute.")

Kim's reply brief does not cure these deficiencies. Perplexingly, Kim reanalyzes Ma's testimony regarding how Kim was paid, while, like the proverbial ostrich, entirely ignoring Pina's. [Dkt. 46 at 4-5]; *see also Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011). Kim argues Midori attempts to "turn[] the tip credit system on its head" by paying her less than the applicable minimum wage and then hoping she would make up the difference in tips. [*Id.*] She adds "[i]f Plaintiff made up the difference in tips, all would be well. But if she did not, Defendant Ma admitted, she would not be fully compensated." [*Id.* at 5.] This accurately summarizes (at least a portion of) Ma's deposition testimony, but that is not how Pina characterizes Midori's payment structure.

Instead, Pina claims Kim was paid $50 per shift in *wages*, separate from how much she earned in tips. [Dkt. 41 ¶ 6.] If true, and Kim worked an 8-hour day at Midori, then she would earn $6.25 per hour in wages. As noted above, this would fall short of the minimum cash wage Midori was obligated to pay under the CMWO by between 15¢ and $2.15 per hour depending on the year. The violation would occur regardless of whether Kim received tips in excess of the applicable standard

minimum wage. Midori's violation would, of course, be exacerbated if Kim worked more than 40 hours per week because there is no indication Midori ever paid time-and-a-half for overtime wages.

As previewed by the Court's constant use of hypotheticals, the problem for Kim is there is no documentation whatsoever to support how many hours she actually worked—or how much she was paid, or whether those payments consisted of wages or tips. The checks supplied by Midori, [Dkt. 41-4], do not help because they do not explain what types of payment (e.g., tips, wage) went into the total, nor the pay period covered by the check. The only other documentation in the record at all (beyond a handful of text messages in Korean) is a *pre-discovery* chart created by Kim purportedly showing how much she was owed based on minimum/overtime wage rates and rough estimates of how many days she worked. [Dkt. 41-3.]

This failure means the Court cannot even definitively conclude Midori violated the CMWO because Pina asserts "Kim never worked more than forty hours per week at the restaurant." [Dkt. 41 ¶ 8.] If Kim never worked more than 40 hours a week, then it is theoretically possible Midori's $50 daily wage complied with CMWO requirements.[12] More fundamentally, even if the Court could determine based on the record before it that Midori failed to pay Kim the applicable minimum wage or overtime pay, it would be impossible to ascertain damages. *See Brown*, 534 F.3d 593, at 595 (a plaintiff that establishes a FLSA violation must still prove at least approximate damages). Simply stated, without this information, she cannot meet her

---

[12]   If Kim worked no more than six hours a day, for example, then the $50 wage would satisfy even the highest CMWO minimum cash wage ($50 / 6 = $8.33 per hour).

"burden of proving that [s]he performed work for which [s]he was not properly compensated." *Melton*, at 818.

In so finding, the Court has little doubt that something is amiss with Midori's recordkeeping. Neither party has supplied any sort of documentation which would allow any factfinder to reach any conclusions on Kim's pay or hours—the bread and butter of an FLSA claim. This is so despite Kim filing a motion to compel Midori to produce these types of documents after Midori indicated they did not have basic employment records required under the FLSA. [*See* Dkts. 23, 23-2, 27.] It is unclear to the Court whether Midori ultimately produced any additional documents in response to the motion to compel, if they existed; presumably at least one of the parties would have included them in their briefing.

To the Court's bewilderment, however, Kim—who has the burden for not only this motion but also trial—does not provide any explanation for why this information is missing. The Court would have expected Kim to re-raise the fact (if true) that Midori does not maintain any of the types of records for employees as demanded by the FLSA because it severely limits her ability to prove her claim. *See Zavala-Alvarez*, 617 F.Supp.3d at 884 ("the FLSA does not require exactitude, especially when the employer has prevented exactitude" through inadequate recordkeeping). But Kim is silent, and the Court is left to guess.

Ultimately, Kim's testimony based on her personal recollection that she was not paid the applicable standard or overtime minimum wage "is enough to survive summary judgment", *Bum Hoon Lee v. BK Schaumburg Inc.*, 2020 WL 3577994, at

*5 (N.D. Ill. July 1, 2020), but considering Pina's testimony and the lack of supporting documentation, it is not sufficient to grant summary judgment. And it is certainly not enough to award damages. Kim's motion for summary judgment is denied.[13]

## IV.   Conclusion

For the reasons stated herein, Kim's motion for summary judgment is denied.


Enter: 22 CV 2375
Date:  April 18, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[13]      The Court also denies Kim's second request to certify a collective action. [Dkt. 37 at 7.] While the Court has serious concerns regarding Midori's payment and recordkeeping practices, Kim has wholly failed to correct the shortcomings of her previous motion; namely, "she provides no corroboration of these other servers' experiences" and "[t]here is even less support" for other workers such as busboys and sushi chefs. [Dkt. 16 at 5.]